OPINION
{¶ 1} Kristin Thompson is appealing the judgment of the Clark County Common Pleas Court domestic relations division that granted standard visitation to Mark Putthoff, the father of Thompson's twin sons.
 {¶ 2} In November of 2001, Kristin Thompson was pregnant with twin boys and living with the father of the boys, Mark Putthoff. The doctors discovered that a problem known as "twin to twin transfusion" had arisen in the pregnancy. As a result of this condition, one of the twins was receiving the blood and nutrient supply of the other twin in addition to his own. Therefore, an emergency caesarean section operation was performed to deliver the twins three months prematurely on November 22, 2001 at the University of Cincinnati Hospital.
 {¶ 3} As a result of this premature birth, the children suffered several life threatening problems. Zackery was born weighing one pound and five ounces and was ten inches long. Christopher was born weighing two pounds and two ounces and was twelve inches long. The children received twenty-four hour care by neonatologists at the hospital. Christopher was not released from the hospital until January 14, 2002, and Zackery was not released until March 20, 2002.
 {¶ 4} Shortly after the children were born, Thompson moved in with her parents in Clark County, Ohio, although she resided temporarily at the Ronald McDonald House at the University of Cincinnati Hospital. Due to the children's medical and physical needs, Thompson continues to live with her parents. The children's maternal grandparents assist Thompson with the care of the children as they have several health problems.
 {¶ 5} Due to their premature birth, both boys have respiratory problems that make them highly susceptible to "Respiratory Syncytial Virus" (hereinafter "RSV") that may result in extreme breathing difficulties that requires treatments and possibly result in hospitalization. As a result, both boys receive expensive monthly shots during RSV season to avoid contracting the virus. Additionally, Zackery suffers from chronic lung disease. Zackery has a lessened breathing capacity due to the permanent damage of his bronchia and that his lungs are not growing proportionally to his needs. Putthoff smokes but promises not to smoke near the children or indoors.
 {¶ 6} Additionally, Zackery was born with a brain hemorrhage that has led to developmental delays. Specifically, he has sensory and motor system problems. Zackery is as yet unable to control his muscles and at the time of the hearing in this case, he could not sit up and sometimes could not lift his head despite being nearly one and a half years old. Developmentally, he is only at a six month old level. Further, his sensory and motor system problems create difficulties for him to adjust to noises, changes in environment, and distractions, and he is sensitive to any light changes. As a result of these delays, Zackery must receive the weekly assistance of a physical therapist to assist him with body movements. Then, these movements are practiced by his family repeatedly everyday. Zackery's doctor stated in his deposition that it was important for Zackery's family to stimulate him with the exercises from his therapy often in order to improve his developmental delays. His therapist testified at the hearing that he would need continued physical therapy for many years into the future. Additionally, she stated that Zackery could possibly need additional feeding therapy and speech therapy. In describing the complicated nature of his condition, the therapist testified that it took her over two months to learn his body make up and to determine his needs and limits. The maternal grandmother has attended all of the physical therapy sessions and explains the therapy to Thompson so they can both perform the therapy on the child. Although the father has only attended one less therapy session than Thompson, the therapist indicated that at the time of the hearing he was still unable to provide proper care for Zackery's special needs.
 {¶ 7} Further, Zackery suffers from a chronic digestive problem, known as "Necrotizing Entrerocolotises." He has endured several surgeries as a result of this problem. He is lactose intolerant, suffers from reflux and incurs severe vomiting and diarrhea if he does not follow a strict diet. Zackery is limited to two specific kinds of formula. If any other formula is given to him, it may result in the need for immediate medical attention.
 {¶ 8} Another complication from the children's premature birth is vision problems. Both of the boys' retinas detached as a result of their premature birth. While Christopher's retina reattached on its own, Zackery has undergone three separate surgeries in an attempt to reattach his retina. At the time of the hearing it was unclear whether these surgeries would be successful. At the hearing, Thompson testified that Zackery was legally blind, specifically he is only able to see one inch in front of his left eye and five inches in front of his right eye.
 {¶ 9} Aside from his visits in the hospital shortly after the children were born, the father has only visited the boys on five occasions. During these visits the children have remained at Thompson's residence. Additional visitation has not occurred as Thompson and Putthoff cannot agree on any set visitation. Additionally, Putthoff and Thompson's parents are apparently unable to get along, resulting in Putthoff requiring that Thompson's parents leave their residence whenever Putthoff visited the children there. The communication between Putthoff and Thompson is poor. Moreover, Putthoff has failed to give Thompson any monetary contributions to the children's care, medical expenses, or pay any formal child support. Further, Putthoff has never provided any clothing, toys, or other necessities for the children other than one package of diapers and one package of baby wipes. Putthoff has never given the children their medications, their breathing treatments or even performed a daily task of bottle preparation, bathing, or feeding.
 {¶ 10} Putthoff filed a motion seeking visitation rights with Christopher and Zackery in August of 2002. Two hearings were conducted — one heard by the magistrate on December 23, 2002 and one heard by the trial court in March 4, 2003. The trial court issued its judgment on March 17, 2003, granting Putthoff the standard order of visitation that includes overnight visits.
 {¶ 11} Thompson has filed this appeal from the trial court's order, raising the following assignments of error.
 {¶ 12} "[1.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY GRANTING THE STANDARD ORDER OF VISITATION OF THE PARTIES MINOR CHILDREN TO THE FATHER/APPELLEE WITHOUT FIRST ORDERING A REASONABLE BREAK IN PERIOD.
 {¶ 13} "[2.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY NOT APPOINTING A GUARDIAN AD LITEM TO REPRESENT THE INTEREST OF THE PARTIES' MINOR CHILDREN WHEN THE INTEREST OF THE CHILDREN CONFLICT WITH THOSE OF A PARENT."
Appellant's first assignment of error:
 {¶ 14} Thompson argues it was an abuse of discretion for the trial court to grant Putthoff standard visitation without a breaking in period considering their children's multiple health problems and Putthoff's limited knowledge and experience with the children and their health problems. We agree.
 {¶ 15} A trial court has broad discretion in custody matters and therefore its custody determination will not be reversed absent an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144; Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 23. An abuse of discretion amounts to more than an error in judgment but implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 16} R.C. 3109.051, which addresses granting visitation rights, provides:
 {¶ 17} "(C) When determining whether to grant parenting time rights to a parent pursuant to this section or section 3109.12 of the Revised Code * * * when establishing a specific parenting time or visitation schedule, and when determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider any mediation report that is filed pursuant to section 3109.052 of the Revised Code and shall consider all other relevant factors, including, but not limited to, all of the factors listed in division (D) of this section. * * *
 {¶ 18} "(D) In determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code * * * in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12
of the Revised Code, the court shall consider all of the following factors:
 {¶ 19} "(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
 {¶ 20} "(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
 {¶ 21} "(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
 {¶ 22} "(4) The age of the child;
 {¶ 23} "(5) The child's adjustment to home, school, and community;
 {¶ 24} "(6) * * *
 {¶ 25} "(7) The health and safety of the child;
 {¶ 26} "(8) The amount of time that will be available for the child to spend with siblings;
 {¶ 27} "(9) The mental and physical health of all parties;
 {¶ 28} "(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;
 {¶ 29} "(11) * * *
 {¶ 30} "(12) * * *
 {¶ 31} "(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 32} "(14) Whether either parent has established a residence or is planning to establish a residence outside this state;
 {¶ 33} "(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;
 {¶ 34} "(16) Any other factor in the best interest of the child."
 {¶ 35} Thompson argues that the trial court erred in failing to require a transition period of adjustment for the visitation. Thompson argues that the trial court should have ordered a temporary visitation period in which Putthoff could visit with the children in his home for several hours but not overnight. Then once the children had adjusted to the visitation, the court should review the situation and order overnight visitation if it's in the children's best interests. In support of her argument, Thompson points to fragility of the children's health.
 {¶ 36} Thompson testified at trial that during the season where RSV is more common the children only leave their home to go to the babysitters while she works or to go to physical therapy. Additionally, Zackery's physical therapist testified that he has sensory and motor skills problems that make it difficult for him to adjust to changes in his surroundings. Although the therapist testified that Putthoff could learn to read Zackery's behavior and the necessary physical therapy, she stated that her observations of his interaction with Zackery at the therapy sessions did not indicate that he was currently able to care for Zackery's special needs. Further, the therapist testified that while it is true that Putthoff needs more visitation with Zackery to improve their relationship she cautioned that this visitation needs to be gradual. Although the children's doctor opined that there were no medical reasons that the children could not be with Putthoff, this was conditioned on the assumption that Putthoff would take the same precautions and exercise the same care as Thompson. However, Putthoff has not indicated an understanding of the necessary precautions, the medications, or skills that Thompson exercises in her care of the children.
 {¶ 37} Putthoff has only visited the children in Thompson's home for a limited amount of hours and under Thompson's supervision. Although Thompson may not have encouraged visitation by Putthoff, the fact remains that Putthoff has yet to have ever administered the children's medications, prepared their meals, bathed the children, or demonstrate an appreciation for the children's special needs. Particularly troubling is the therapist's statement that Putthoff does not currently understand Zackery's sensory and motor skills problems and how to care for those problems. Although the evidence suggests that Putthoff can be taught to provide the necessary medical care and therapy, the fact remains that the evidence presented at the hearing demonstrated that at the time of the hearing he lacked this knowledge. Further, the trial court order allows for two overnight visits a week despite the fact that the boys have never been to Putthoff's residence and the evidence demonstrates that due to his sensory and developmental delays, Zackery has trouble adjusting to changes in his surroundings. The evidence demonstrates that the health and safety of the children may be jeopardized by the standard order of visitation that permits Putthoff to immediately receive the children for 48 hour periods each week and for an entire month in the summer. As such, we agree with Thompson that the trial court abused its discretion in ordering Putthoff receive the standard visitation at this time. Although we agree with the trial court that the visitation between Putthoff and the children is important and necessary, considering these children's slowed development, we think a more gradual period of visitation would be reasonable.
 {¶ 38} Thompson's first assignment of error is sustained. The judgment of the trial court is reversed and remanded for a hearing on a transition period of visitation.
Appellant's second assignment of error:
 {¶ 39} Thompson argues that the trial court abused its discretion by failing to appoint a guardian ad litem for the children when the children's interests differed from that of the parents. We disagree.
 {¶ 40} Thompson argues that the trial court should have appointed a guardian ad litem for her children based on R.C. 2151.281, R.C. 3109.04, or Civil Rule 17. R.C. 2151.281 provides for the court to appoint a guardian ad litem if the case concerns an alleged delinquent or unruly child, if the proceeding concerns an alleged abused or neglected child, or if the proceeding is pursuant to R.C. 2151.414, which deals with motions for permanent custody by an agency. R.C. 3109.04 provides for the appointment of a guardian ad litem if the trial court is to interview the child.
 {¶ 41} Civil Rule 17(B), which is titled "[P]arties plaintiff and defendant; capacity," provides in relevant part "[w]hen a minor or incompetent person is not otherwise represented in an action the court shall appoint a guardian ad litem or shall make such other order as it deems proper for the protection of such minor or incompetent person."
 {¶ 42} Since this case did not involve an alleged delinquent or unruly child, an alleged abused or neglected child, or was a motion for permanent custody, R.C. 2151.281 was not applicable to this case. Similarly, the trial court did not seek nor was it requested to interview the children in this matter. As such, R.C. 3109.04 is not applicable to this case. Although Civil Rule 17 does provide for the appointment of a guardian ad litem for a minor who is not represented in a matter, Civil Rule 17 is dealing with parties to an action. The children in this matter were not parties before the court and as such Civil Rule 17 did not apply. Thus, none of the statutes or the civil rule to which Thompson points for her argument that the trial court should have appointed a guardian ad litem support her claim.
 {¶ 43} Moreover, Thompson did not request at the trial court level that a guardian ad litem be appointed. Rather, she raises the issue of the appointment of a guardian ad litem for the first time on appeal. The trial court is the proper place to raise such arguments. By failing to do so, Thompson has waived this issue for appeal. Thompson's second assignment of error is without merit and is overruled.
 {¶ 44} The judgment of the trial court is reversed, and the matter is remanded for a hearing on a transition period of visitation.
FAIN, P.J. and GRADY, J., concur.